El Pueblo de Puerto Rico, demandante y apelado, *v.* Juan Vázquez Suárez, acusado y apelante.

Núm. 11254.—*Sometido:* Junio 14, 1946. *Resuelto:* Julio 15, 1946.

---

(⁵) Véanse 8 *Manresa* 226, 227; 19 *Scaevola* 836, 837; 2 *Restatement of the Law of Contracts, American Law Institute,* págs. 700, 701.

*Alfonso Lastra Charriez, José R. Fournier, Samuel R. Quiñones,* y
*Francisco Torres Aguiar,* abogados del apelante; *Hon. Procurador
General E. Campos Del Toro, Luis Negrón Fernández, Primer
Procurador General Auxiliar,* y *J. Correa Suárez, Fiscal Auxiliar
del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Juan Vázquez Suárez fué acusado ante la Corte de Distrito de Bayamón de un delito de asesinato en primer grado, convicto por un jurado del de homicidio voluntario y sentenciado por la corte a cumplir ocho años de presidio.   En este recurso imputa a la corte inferior la comisión de veintiún errores.   Bastará considerar el señalamiento segundo, el cual, a nuestro juicio, conlleva la revocación de la sentencia y la concesión de un nuevo juicio.

En el segundo señalamiento se alega que la corte inferior erró al excluir a los señores jurados Martín Ibáñez, Juan Ríos, Rafael Martínez y Ramón Bou Galí, sin razón alguna para ello aparte del injustificado motivo de ·ser de Corozal y sin que para ello hubiera mediado instancia de parte o solicitud de dichos jurados.

Los hechos imputados al acusado ocurrieron, según la acusación, en el pueblo de Corozal.   El incidente que dió lugar a la resolución de la corte ocurrió al comenzar el juicio y procederse a constituir el jurado que había de intervenir en el mismo.   El secretario extrajo doce papeletas de la caja que contenía el panel regular y se les tomó el juramento preliminar a los doce jurados sorteados.   Entre ellos estaban

los señores Martín Ibáñez y Juan Ríos del pueblo de Corozal. Fueron interrogados, tanto por el fiscal como por la defensa, en cuanto a sus cualificaciones y con el fin de determinar la procedencia de recusaciones motivadas, y declararon que a pesar de vivir en Corozal, conocer a las partes y haber oído los comentarios públicos sobre el caso, no habían formado opinión sobre el mismo y estaban en condiciones de rendir un veredicto justo e imparcial. Ocurrió entonces lo siguiente:

"LA CORTE: ¿Cuántos de los señores del jurado son de Corozal? —R. Dos.—LA CORTE: La Corte los excusa de servir como jurados en este caso, usando del poder discrecional que tiene la Corte. Se excusa al señor Ríos y al señor Martín Ibáñez.—DEFENSA: ¿Me perdona Su Señoría? ¿Estos dos señores jurados no pueden servir en este caso por que son de Corozal, y por eso han sido excusados?—LA CORTE: Ellos han contestado que no conocen los hechos del caso, un pueblo chiquito como lo es Corozal, y la Corte juzga conveniente que debe excusarlos de servir como jurados para los mejores fines de la justicia.—DEFENSA: Nosotros respetuosamente tomamos excepción de la resolución de la Corte, fundándonos en que la resolución de Su Señoría violenta la formación y constitución del jurado, lo que informa la institución del jurado. Quisiéramos saber en qué sitio deben convivir las personas que deben juzgar la culpabilidad e inocencia de cada individuo, sino es en el distrito.—LA CORTE: La Corte tiene motivos para creer, a través de las preguntas de las partes, que no deben servir como jurados. El acusado a lo más que tiene derecho es a un jurado imparcial y justo.—DEFENSA: Nosotros tomamos excepción de la resolución de la Corte." (Págs. 35–6, T. de E.)

Otros jurados fueron recusados perentoriamente y se completó el panel y entre los nuevos jurados sorteados estaban los señores Rafael Martínez y Ramón Bou Galí de Corozal. El primero sólo llegó a contestar que no conocía nada del caso cuando la Corte lo excusó "por las mismas razones aducidas anteriormente" y al anotar excepción la defensa, dijo: "Que se anote la excepción. La Corte tiene

poder discrecional para excusar a cualquier jurado por cualquier motivo en un caso en que la corte cree que no debe servir de jurado." (Pág. 57, T. de E.)

En cuanto al Sr. Bou Galí, declaró que no sabía nada del caso excepto lo que leyó en la prensa pero que no había formado opinión y estaba en condiciones de rendir un veredicto justo e imparcial. Esto no obstante la Corte lo excusó por ser de Corozal repitiendo que tenía poder discrecional para excusar a cualquier miembro del jurado. La defensa anotó excepción.

El artículo 188 del Código de Enjuiciamiento Criminal especifica once clases de personas que están exentas de que se les elijan como jurados y dispone que "El tribunal debe relevar del servicio de jurado a todo individuo que se encuentra en uno de los casos siguientes: Cuando resulte manifiesta su incompetencia" y "Cuando resulte hallarse exento y reclame el beneficio de dicha exención." Dispone después el artículo 189 que "No debe el tribunal dispensar a nadie de servir como jurado por motivo leve o trivial, ni por inconvenientes o molestias en sus negocios, sino sólo en el caso de que corra peligro de grave daño o ruina su propiedad o la que tenga a su cargo, o exija su ausencia el estado de su salud, o la enfermedad o muerte de algún miembro de su familia."

De acuerdo con el artículo 184 del mismo Código el jurado es un cuerpo de hombres elegidos de entre los habitantes de determinado distrito. Este cuerpo de hombres es seleccionado por una comisión que se compone de un individuo por cada uno de los municipios comprendidos en el distrito, nombrado por la Corte de Distrito,[1] debiendo dichos comisionados preparar una lista general definitiva de trescientos jurados para el distrito y cada comisionado debe hacer una lista provisional de cien nombres de personas de su respec-

---

[1] Sec. 1, Ley de 10 de marzo de 1904 (Leyes de 1904, pág. 118), enmendada por la Ley núm. 21 de 11 de marzo de 1918 (Leyes de 1918, pág. 115).

tivo municipio que estén capacitadas para actuar como jurados en el distrito judicial, debiendo dichos comisionados determinar hasta donde sea posible el número proporcional que de los trescientos jurados corresponda a cada municipio, tomando como base para ello su población, según el último censo, y el número así determinado se extraerá a la suerte de entre los cien nombres en la lista provisional del respectivo municipio. (Art. 194, Código de Enjuiciamiento Criminal.) Después de certificada la lista de trescientos jurados, los miembros cuyos nombres estén comprendidos en dicha lista definitiva "serán reconocidos como jurados regulares para conocer de los juicios de la corte de distrito para el cual han sido elegidos, . . ." (Artículo 197 del Código de Enjuiciamiento Criminal.)

Tenemos, por lo tanto, que si bien el jurado es un cuerpo de hombres elegidos de entre los habitantes de determinado distrito, en él deben figurar, proporcionalmente a su población respectiva, individuos de todos y cada uno de los municipios que componen el distrito judicial. Esto no significa, sin embargo, que al constituirse un jurado en un juicio determinado los individuos sacados de la urna por sorteo, se consideren como jurados del municipio a que pertenecen sino que, por pertenecer a dicho municipio, son jurados del distrito judicial con residencia en determinado municipio. Los jurados que residían en Corozal formaban parte del panel de jurados del distrito judicial de Bayamón. El haber ocurrido los hechos en este caso en el pueblo de Corozal no implicaba, *per se*, ninguna descualificación legal para que ellos pudieran juzgar dichos hechos. ¿Tenía discreción la corte inferior para, *motu proprio*, excusarlos por ser ellos de Corozal? La pregunta debe contestarse en la negativa.

Hemos resuelto que el excusar a varios jurados para conocer de un caso es cuestión que descansa en la sana discreción de la corte. *Pueblo* v. *Morales* (*a*) *Yare Yare*, 14 D.P.R. 234; *Pueblo* v. *Gracia*, 31 D.P.R. 910; *Pueblo* v. *Cruz*, 60

D.P.R. 116. El caso de autos es distinto. Los jurados de Corozal no solicitaron ser excusados. Tampoco el fiscal los había recusado. Por el contrario por las contestaciones que dieron al interrogatorio a que fueron sometidos no hubieran prosperado recusaciones motivadas contra ellos. De hecho la corte inferior lo que hizo no fué excusarlos, sino recusarlos perentoriamente por su cuenta.

En el caso de *State* v. *Royster,* 186 S. E. 921 (S. C. 1936), se resolvió que la corte no tiene poder para excluir del panel de jurados, a moción del acusado presentada antes del juicio, a todos los miembros del jurado que trabajaban en una industria de tejidos por el hecho de que el asesinato imputado había ocurrido como consecuencia de un motín entre trabajadores y huelguistas de dicha industria. La Corte Suprema se expresó así:

"No creemos que pueda sostenerse con fundamento, bien como cuestión de ley o de hecho, que todos los miembros de una clase, especialmente cuando dicha clase es grande, estén predispuestos o prejuiciados en un asunto en particular, debido al resentimiento que exista entre sus miembros. Pero aun cuando tal hecho pueda demostrarse finalmente, la única manera que puede determinarse en debida forma sería aplicando la fórmula legal establecida en la sección 637 del Código." (Esta sección se refiere a las recusaciones motivadas.)

Al mismo efecto en el caso de *State* v. *Williams,* 9 S. E. 853, se revocó la sentencia por haber el juez excluído a un jurado, que no había sido recusado por las partes, por el hecho de haber sido testigo en otro caso, diciendo la corte a la página 861: "No sabemos bajo qué principio legal se hizo esto. Es cierto, como hemos dicho, que debe obtenerse un jurado imparcial. Esto es esencial tanto para el estado como para el acusado, y la legislatura ha aprobado una ley para dicho fin. (Cita.) La ley provee la forma y manera para determinar la cuestión de prejuicio, con derecho a cada parte, por moción, a que sea aplicada. Creemos que el juez

erró al actuar sin aplicar esta fórmula legal. Si un jurado podía ser excluído-en esta forma, ¿por qué no todo el panel? . . .''

Por último, en el caso de *Thiel* v. *Southern Pacific Co.*, resuelto el 20 de mayo de 1946, la Corte Suprema de los Estados Unidos revocó la sentencia por el hecho de que se probó que en la selección del panel general de jurados se habían eliminado todas aquellas personas que trabajaban por un salario diario. El caso procedía del estado de California. El tribunal se expresó así:

"La tradición americana del juicio por jurado, considerada en relación con un procedimiento criminal o con uno, civil, necesariamente contempla un jurado imparcial sorteado de entre los representativos (*cross section*) de la comunidad. (Citas.) Esto no significa, desde luego, que todo jurado deba contener representativos de todos los grupos económicos, sociales, religiosos, raciales, políticos o *geográficos* de la comunidad; frecuentemente tal representación completa sería imposible. Pero sí significa que jurados prospectivos serán seleccionados por funcionarios de la corte sin una intencional y sistemática exclusión de cualquiera de estos grupos. Debe reconocerse el hecho de que aquellos elegibles como jurados pueden encontrarse en todo estrato de la sociedad. *La competencia para ser jurado es individual más bien que cuestión de grupo o clase.* Ese hecho constituye el nervio del sistema de jurados. No hacer caso del mismo es abrir la puerta a distinciones de clases y discriminaciones que repugnan con los ideales democráticos del juicio por jurado." (Bastardillas nuestras.)

Refiriéndose, en el mismo caso, a la discreción judicial se sostuvo que "Esta discreción, desde luego, tenía que ser guiada por las disposiciones legales pertinentes" y se resolvió que ni las leyes federales aplicables ni las del estado de California justificaban la exclusión. Entre las secciones del Código de Procedimiento Civil de California citadas están las 200 y 201, equivalentes (en casos civiles) a los artículos 188 y 189 de. nuestro Código de Enjuiciamiento Criminal, supra.

Las cortes de distrito tienen amplia discreción para excusar a personas de servir como jurado de acuerdo con los artículos 188 y 189 del Código de Enjuiciamiento Criminal. Empero, como hemos dicho, de hecho, lo que hizo la corte inferior en este caso no fué excusar a los jurados de Corozal sino recusarlos perentoriamente. Su actuación no cae dentro del campo del ejercicio de la discreción judicial reconocida a las cortes. Véase *Welch* v. *Tribune Pub. Co.,* 47 N. W. 562, y *Sullivan* v. *State,* 15 So. 264.

Aceptar la actuación de la corte inferior significaría que el jurado no es un cuerpo de hombres elegidos de entre los habitantes del distrito judicial correspondiente, según provee la ley, sino de entre los habitantes del distrito excluyendo los que residen en el municipio donde se alega se cometió el delito. Aun cuando un acusado no tiene derecho a exigir que determinadas personas formen el jurado que ha de juzgarle, sí tiene derecho a que las personas que han de ser excluídas de formar parte de dicho jurado lo sean de acuerdo con lo que dispone la ley.

*Debe revocarse la sentencia apelada y devolverse el caso para la celebración de un nuevo juicio.*